**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| GEORGE MOORE, on behalf of himself and others similarly situated, | CIVIL ACTION FILE NO. |
| Plaintiff, | |
| v. | **COMPLAINT – CLASS ACTION** |
| HEALTHCARE SOLUTIONS INC. and PROSPERITY LIFE INSURANCE GROUP LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff George Moore (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

**NATURE OF ACTION**

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. This case involves a campaign by Prosperity Life Insurance Group LLC ("Prosperity Life") to hire agents, including Healthcare Solutions Inc. ("Healthcare Solutions"), to market Prosperity Life's goods and services through the use of a telemarketing campaign

despite not having the requisite consent to contact those individuals who, like the Plaintiff, were listed on the National Do Not Call Registry.

3. Because telemarketing campaigns use technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

4. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

5. Plaintiff George Moore is an individual citizen and resident of this District.

6. Prosperity Life Insurance Group LLC is a Delaware limited liability company that has its principal place of business at 4415 Pheasant Ridge Road, Suite 300, Roanoke, VA 24014.

7. Defendant Healthcare Solutions Inc. is a Wyoming corporation with its principal place of business at 30 N. Gould St., Suite R in Sheridan, WY 82801.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

9. This Court has personal specific jurisdiction over Prosperity Life because it offers insurance services in this District as a result of the telemarketing calls its agents makes, just as it did with the Plaintiff.

10. This Court has personal specific jurisdiction over Healthcare Solutions because it makes telemarketing calls into this District, just as it did with the Plaintiff.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the Plaintiff is a resident of this District, which is where he received the illegal telemarketing calls that are the subject of this putative class action lawsuit.

## TCPA BACKGROUND

12. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The National Do Not Call Registry</u>

13. § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

14. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

15. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

16. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## **FACTUAL ALLEGATIONS**

17. Defendant Prosperity Life is a "person" as the term is defined by 47 U.S.C. § 153(39).

18. Defendant Healthcare Solutions is a "person" as the term is defined by 47 U.S.C. § 153(39).

Calls to Plaintiff

19. Plaintiff Moore's telephone number, 727-XXX-8035, is a residential telephone line.

20. It is not associated with a business and is used by Mr. Moore only.

21. The telephone number has been on the National Do Not Call Registry since July 7, 2017.

22. Plaintiff Moore received two telemarketing calls from Healthcare Solutions on August 13, 2021.

23. Both calls came from the same Caller ID, (786) 259-6635.

24. Mr. Moore terminated the first call.

25. However, Healthcare Solutions made another call to Mr. Moore.

26. Mr. Moore engaged the telemarketer on the second call to learn the purpose of the calls.

27. During the call, Mr. Moore spoke with Carol Jandera, an employee of Healthcare Solutions.

28. On that call, Ms. Jandera offered an insurance policy from Prosperity Life.

29. Ms. Jandera proposed to connect Mr. Moore telephonically with Prosperity Life, in order to complete his sign-up for that insurance policy.

30. Mr. Moore was not interested in speaking with Prosperity Life and ended the call shortly thereafter.

31. Following the call, Ms. Jandera sent an e-mail to Mr. Moore confirming the offer from Prosperity Life.

32. The e-mail came from carol.jandera@ourhcs.com.

33. "ourhcs.com" is a domain owned by Healthcare Solutions.

34. Mr. Moore subsequently wrote to the company and requested any evidence of permission that he be contacted.

35. He did not receive a response.

36. The calls received by Plaintiff were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as they seek to have him sign up for Prosperity Life's services.

37. Plaintiff and all members of the class defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were subjected to annoying and harassing calls that constitute a nuisance. The calls also occupied Plaintiff's telephone line from legitimate communication.

## PROSPERITY LIFE'S LIABILITY FOR THE CONDUCT OF HEALTHCARE SOLUTIONS

38. For more than twenty-five years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

39. In fact, the Federal Communication Commission has instructed that sellers such as Prosperity Life may not avoid liability by outsourcing telemarketing to third parties, such as Healthcare Solutions:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

40. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

41. Prosperity Life is liable for Healthcare Solutions' conduct because they control the manner and means of its telemarketing methods by:

    a)     acquiescing to their business mode of using a call center;

    b)     instructing them on the geographic regions they can make calls into;

    c)     providing qualifications for potential clients to be sent;

    d)     allowing Healthcare Solutions to engage clients for their insurance policies; and

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

  e)  instructing Healthcare Solutions to bring a Prosperity Life employee on the line with potential customers in order to complete the sign-up of customers for insurance policies.

42. Prosperity Life knew (or reasonably should have known) that Healthcare Solutions was violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct.

43. Any reasonable seller that accepts telemarketing call leads from lead generators would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

44. Indeed, two of the operators of Healthcare Solutions, Nathan Beeson and Kenneth Dickinson, agreed to a Stipulated Order for Permanent Injunction in an action brought by the Federal Trade Commission, *Federal Trade Commission v. Lift International, at. al.*, Civil Action No. 2:17-cv-506-RJS, ECF No. 7 (June 7, 2017).

45. In that Stipulated Order for Permanent Injunction, Messrs. Beeson and Dickinson agreed that:

  a. They had participated in deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, and the FTC's trade regulation rule entitled Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, in the operation of a telemarketing scheme. *Id.* at ¶ 2.

  b. They would no longer violate any provisions of the TSR. *Id.* at *5.

  c. Agree to a judgement of $10,500,000. *Id* at *6.

46. Prosperity Life knew, or should have been aware, of these findings. Yet they continued their relationship with Healthcare Solutions.

7

47. Moreover, prior to the calls in August of 2021, Mr. Moore wrote to Prosperity Life advising that he was being called despite that the number being contacted by insurance agents offering Prosperity Life insurance was on the National Do Not Call Registry.

48. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## CLASS ACTION ALLEGATIONS

49. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

50. Plaintiff brings this action on behalf of himself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23.

51. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **National Do Not Call Registry Class**: All persons in the United States whose, (1) telephone numbers were on the National Do Not Call Registry for at least 30 days, (2) but received more than one telephone solicitation from or on behalf of Defendants (3) within a 12-month period, (4) from four years prior the filing of the Complaint.

Excluded from the Class are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

52. The Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Class as he has no interests that conflict with any of the Class members.

53. Plaintiff and all members of the Class have been harmed by the acts of the Defendants, including, but not limited to, the invasion of their privacy.

54. The Class as defined above are identifiable through dialer records, other phone records, and phone number databases.

55. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds in the Class.

56. The joinder of all class members is impracticable due to the size and relatively modest value of each individual claim.

57. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

58. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the claims predominate over questions which may affect individual class members because of the uniformity of the telemarketing conduct.

59. There are numerous questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

  (a) Whether Prosperity Life is vicariously liable for the acts of Healthcare Solutions;

  (b) whether multiple telemarketing calls were made promoting Defendants' goods or services to members of the National Do Not Call Registry Class;

  (c) whether the telemarketing calls at issue were made to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls;

9

(d) whether Defendants' conduct constitutes a violation of the TCPA; and

(e) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

60. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so.

61. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendants and/or their agents.

62. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**FIRST CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. 227, et seq. and 47 C.F.R. §§ 64.1200(c))**
**on behalf of the National Do Not Call Registry Class**

63. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

64. Defendants violated the TCPA and the Regulations by making, or having their agent make, two or more telemarketing calls within a 12-month period on Defendants' behalf to Plaintiff and the members of the National Do Not Call Registry Class while those persons' phone numbers were registered on the National Do Not Call Registry.

65. As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and National Do Not Call Registry Class members are entitled to an award of up to $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(c)(5).

66. Plaintiff and Class Members are entitled to an award of treble damages if their actions are found to have been knowing or willful.

67. Plaintiff and National Do Not Call Registry Class members are also entitled to and do seek injunctive relief prohibiting the Defendants from advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Injunctive relief prohibiting Defendants from making telephone calls advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future;

B. As a result of Defendants' negligent, willful and/or knowing violations of 47 C.F.R. § 64.1200(c), Plaintiff seeks for himself and each member of the Class up to treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

C. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

D. Such other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff requests a jury trial as to all claims of the complaint so triable.

                PLAINTIFF,
                By his attorney

                */s/ Anthony I. Paronich*
                Anthony I. Paronich
                Paronich Law, P.C.
                350 Lincoln Street, Suite 2400
                Hingham, MA 02043
                (508) 221-1510
                anthony@paronichlaw.com