UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE MOORE, on behalf of himself and others similarly situated, | ) ) ) |
| Plaintiff, | ) ) Case No. 21-cv-4919 |
| v. | ) ) Hon. Steven C. Seeger |
| HEALTHCARE SOLUTIONS INC. and PROSPERITY LIFE INSURANCE GROUP LLC, | ) ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff George Moore received two calls to his home phone from the same phone number, on the same day. He didn't answer the first call. But when the caller rang his phone a second time, he picked up. And it didn't take him long to regret it. Instead of hearing a friendly voice, he heard a sales pitch for a product that he didn't want.

The caller was a representative from Defendant Healthcare Solutions, Inc., offering to sell Moore an insurance policy. And just like that, Moore's home turned into an insurance bazaar, with a salesperson peddling products that Moore didn't want or need. Moore wasn't interested in insurance, so he hung up.

But Moore didn't leave it at that. His phone number is on the national Do Not Call Registry, and he isn't supposed to receive sales calls at home. So Moore turned the tables and delivered an unwelcome communication of his own. He sued Healthcare Solutions for violating the Telephone Consumer Protection Act ("TCPA") when it called him more than once.

Healthcare Solutions, in turn, moved to dismiss the complaint. For the following reasons, the Court denies Defendant's motion to dismiss.

## Background

At the motion-to-dismiss stage, the Court must accept as true the complaint's well-pleaded allegations. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

On August 13, 2021, Plaintiff George Moore received two phone calls to his residential telephone line from the same phone number. *See* Cplt., at ¶¶ 19, 22–23 (Dckt. No. 1). The calls went to a residential number "used by Mr. Moore only." *Id.* at ¶ 20. Moore's caller ID showed that both phone calls came from the same phone number. *Id.* at ¶ 23.

Moore didn't answer the first call. *Id.* at ¶ 24. The complaint does not reveal why. Maybe, like many of us when we receive a call from an unknown number, Moore simply ignored the call. After all, answering the phone from an familiar number is a dicey proposition. Not much good can come from it. Most of the time, there is more downside than upside in exposing oneself to a stranger on the phone.

Maybe he had his hands full. Maybe the game was on, or maybe he simply didn't feel like getting interrupted. Whatever the reason, the key point is that someone called, and Moore didn't answer.

But when Moore received a second call from that number, he picked up. *Id.* at ¶ 26. Moore soon discovered that Carol Jandera, an employee of Defendant Healthcare Solutions, was on the other end of the line. And she wanted to sell.

Jandera offered to sell Moore an insurance policy from Prosperity Life Insurance Group. *Id.* at ¶ 28. Jandera then offered to transfer Moore to Prosperity Life so that he could sign up for an insurance policy. *Id.* at ¶ 29.

Moore apparently wasn't interested in buying insurance, so he ended the call. *Id.* at ¶ 30. Sometime later, Moore received an email from Jandera to confirm Prosperity Life's policy offer. *Id.* at ¶ 31. Jandera's email address had the domain "ourhcs.com," which is a domain owned by Healthcare Solutions. *Id.* at ¶¶ 32–33.

That email, like the call, apparently didn't sit well with Moore. He wrote Healthcare Solutions and requested evidence showing that it had permission to contact him. *Id.* at ¶ 34. He never received a response. *Id.* at ¶ 35.

As it turns out, Moore's phone number was listed on the Do Not Call Registry since July 7, 2017. *Id.* at ¶ 21; *see also* 15 U.S.C. § 6151. He didn't expect unwanted calls as someone with a number on the Do Not Call Registry. He expected domestic tranquility. He didn't want calls from salespeople. He wanted peace and quiet.

Moore responded with his own form of unsolicited communication. He filed a class action complaint against Healthcare Solutions and Prosperity Life, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. *See* Cplt., at ¶¶ 63–64 (Dckt. No. 1). He seeks statutory damages of up to $500 for each violation, and treble damages for any knowing or willful violation. *Id.* at ¶¶ 65–66.

Prosperity Life filed a motion to dismiss the complaint for lack of personal jurisdiction and for failure to state a claim. *See* Prosperity Life's Mtn. to Dismiss (Dckt. No. 11). After jurisdictional discovery, the parties agreed to dismiss Moore's claims against Prosperity Life

with prejudice. *See* Stipulation of Dismissal (Dckt. No. 36); *see also* 6/1/22 Order (Dckt. No. 38).

Healthcare Solutions, the only remaining defendant, later filed a motion to dismiss. *See* Healthcare Solution's Mtn. to Dismiss (Dckt. No. 39). That motion is now before the Court.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## Discussion

Moore's complaint has a single count. He alleges that Healthcare Solutions violated the TCPA by calling him more than once within a twelve-month period, even though his phone number is on the Do Not Call Registry. *See* Cplt., at ¶ 64 (Dckt. No. 1).

The TCPA creates a private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." *See* 47 U.S.C. § 227(c)(5). One such regulation prohibits calls to numbers on the Do Not Call Registry.

4

Under the regulation, "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." *See* 47 C.F.R. § 64.1200(c)(2). The TCPA defines a "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *See* 47 U.S.C. § 227(a)(4).

Once a telephone number is registered on the Do Not Call Registry, "registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *See* 47 C.F.R. § 64.1200(c)(2). A failure to respect those technological boundaries can lead to significant relief for the person receiving the call. A plaintiff suing under section 227(c)(5) can recover actual monetary losses or statutory damages up to $500. *See* 47 U.S.C. § 227(c)(5)(B).

Moore contends that the calls from Healthcare Solutions fit the bill. He alleges that Healthcare Solutions called him twice, the minimum number of times to bring a claim. And his residential phone number is on the Do Not Call Registry. So, as Moore sees it, he received too many calls to his phone when he should have received none.

Healthcare Solutions moves to dismiss on two grounds.

Healthcare Solutions first argues that the complaint does not allege that Moore received more than one telephone solicitation. Under the regulation, a caller cannot be liable for only one call. The regulation adopts a call-me-twice, shame-on-you approach.

The argument rests on the fact that Moore didn't pick up the first call. Healthcare Solutions points out that Moore "terminated the first call" without answering. *See* Cplt., at ¶ 24

5

(Dckt. No. 1). But he did answer the second call, and only then did Moore "engage[] the telemarketer . . . to learn the purpose of the call." *Id.* at ¶ 24. So, according to Healthcare Solutions, Moore has no way of knowing whether the first call was a "telephone solicitation," or whether it was Healthcare Solutions calling at all.

Moore acknowledges that he never spoke with anyone – including anyone from Healthcare Solutions – during the first call. *See* Pl.'s Resp. to Def.'s Mtn. to Dismiss, at 5 (Dckt. No. 40). That said, he points out that both calls came from the same number, on the same day. So, it is reasonable to assume that the same caller made both calls for the same reason.

The complaint includes enough facts to support a reasonable inference that Healthcare Solutions made two telemarketing calls. The issue of who made the first call isn't much of a whodunit. Moore received two calls from the same number, and the second caller was Healthcare Solutions. It is reasonable to conclude that Healthcare Solutions called the first time, too. Does Healthcare Solutions share a phone number with someone else? Unlikely.

Moore may not know for certain why Healthcare Solutions called him the first time. But the content of the second call gives a pretty good idea. As the plaintiff, Moore is entitled to reasonable inferences in his favor. It is a reasonable inference that the two calls from the same number on the same day were about the same thing.

If anything, it is hard to imagine why else Healthcare Solutions would have called him. There is no suggestion in the complaint that Moore worked there, or knew someone who worked there, or anything along those lines. Maybe Healthcare Solutions has some other story to tell, but if so, summary judgment – not a motion to dismiss – is the time to tell it. It is unlikely that an insurance agent was simply calling a stranger out of the blue to say "Hi."

6

Two judges in this district have held that the "content and timing" of an answered call can "allow[] the court to draw [the] reasonable inference" that unanswered calls were sales solicitations from the defendant. *See Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014) (St. Eve, J.); *see also Moore v. Pro Custom Solar LLC*, 2022 WL 1092186, at *2–3 (N.D. Ill. 2022) (Kocoras, J.). The basic idea is that calls from the same number tend to come from the same person. And a salesperson tends to call for only one reason.

In *Toney*, the plaintiff alleged that the defendant called her four times in a two-day period. *See Toney*, 75 F. Supp. 3d at 746. The first day, the plaintiff's caller ID showed that she received three calls from the same phone number. *Id.* at 732, 746. She didn't answer any of those calls. *Id.* The second day, she received a fourth call from the same phone number, and she finally picked up. *Id.* The caller was a representative of the defendant telemarketing company, offering to sell plaintiff a membership to a subscription retail-discount service. *Id.*

The defendant argued that by answering only one call, the plaintiff didn't plausibly allege that she had received at least two calls from the defendant. *Id.* at 746. Judge St. Eve rejected that argument. The plaintiff answered the fourth call and learned that it was a telemarketer. So it was a "reasonable inference" that the three unanswered calls from the same number a day earlier were from the same person for the same purpose. *Id.*

The inference that a telemarketer called to sell something wasn't much of a stretch. After all, that's what telemarketers do. That's the whole point. They use the telephone to market something. Telemarketers aren't known for calling people for other reasons.

Judge Kocoras reached a similar result in *Moore*. There, the plaintiff (George Moore, presumably the same George Moore in the case at hand) received six calls on five different days in July 2021. *See Moore*, 2022 WL 1092186, at *1. He "listened to and terminated" these calls

7

without engaging the caller. *Id.* Only during the seventh call, in early August 2021, did the plaintiff engage the caller to learn who was calling. *Id.*

The defendant argued that "[b]ecause Moore was only able to identify the seventh caller in a stream of identical calls . . . he [did] not allege he received the requisite two or more calls required under the TCPA." *Id.* at *2. Building on *Toney*, Judge Kocoras ruled that "it is reasonable to believe the first six calls from the same number with the same content were also from [defendant]." *Id.* at *3.

The case at hand does not require a daunting inferential leap, either. Moore received two calls from the same number, on the same day. Given the content of the second call, it is a reasonable inference that the first call was a telemarketing call from Healthcare Solutions.

If anything, the inference is almost unavoidable. Imagine asking your Average Joe on the street why an insurance agent called someone at home. It does not require much creativity to think that the call was about selling insurance. And then, imagine telling Average Joe that there were two calls from the insurance agent on the same day: Call #1 went unanswered, and Call #2 was about selling insurance. Average Joe isn't likely to be stumped about the reason for Call #1.

Maybe Healthcare Solutions can show that it wasn't behind the first call, or that the call wasn't a telephone solicitation. But that's a question for another day. At the motion-to-dismiss stage, the Court must draw all reasonable inferences in Moore's favor. *See AnchorBank*, 649 F.3d at 614. For now, the complaint plausibly alleges that Healthcare Solutions called him twice to peddle a policy.

A different approach would change the incentives against calling and calling and calling people. Congress recognized that unwanted phone calls are an unwelcome intrusion. That's true when you answer your phone. But it is also true when your phone rings, and then rings again –

for call after call, again and again – when you don't pick up. The interruption exists without answering the phone. If the calls don't count under the TCPA unless the person picks up, telemarketers would escape liability for all previous interruptions, no matter how annoying or intrusive. Nothing in the statutory text supports giving callers a pass for such intrusions.

Healthcare Solutions also makes a second argument, but it does not get very far. The argument is about whether Moore – as opposed to someone else – personally registered his phone number on the Do Not Call Registry.

As Healthcare Solutions points out, the regulation prohibits initiating a telephone solicitation to a "residential telephone subscriber who has *registered* his or her telephone number" on the Do Not Call Registry. *See* 47 C.F.R. § 64.1200(c)(2) (emphasis added). So, Healthcare Solutions argues that the regulation applies only if Moore himself registered his phone number.

Healthcare Solutions doesn't dispute that Moore's phone number was on the Do Not Call Registry. Instead, it argues that Moore cannot bring a claim because the complaint doesn't allege that Moore himself registered the phone number.

That argument rests on an unduly strict reading of the regulation. The text refers to a subscriber "who has registered" a telephone number. *Id.* Healthcare Solutions reads that provision to mean a subscriber "who has [personally] registered" a particular number. In effect, Healthcare Solutions is attempting to inject an adverb that is nowhere to be seen.

Nothing in the text ascribes any importance to the person who registered the number. The focus is on whether the number was registered, not who did the registration. The regulation protects numbers, not particular people. That's why the Registry includes numbers, not names.

9

That reading reflects the reality of living together. The regulation covers a "residential telephone subscriber." *Id.* People tend to share residences, and share home telephone numbers. It is hard to see why one spouse would receive the protections of the statute, and another spouse would not. After all, the same phone ringing in the same house could annoy several people. An unwanted phone call to a shared number could annoy everyone in earshot, even if only one member of the household took the time to register the number.

The most natural reading of the regulation prohibits unwanted calls to a number. It is natural to read the statute to protect a number, not simply the person who registered the number.

That reading of the regulation seems to fit with the breadth of the statutory text, too. The statute greenlights a claim by a "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." *See* 47 U.S.C. § 227(c)(5). It protects a "person" who "received more than one telephone call." *Id.* It doesn't seem to matter who registered the number. Anyone on the receiving end of the call can turn the tables and file suit.

It does not matter who registered the phone number on the Do Not Call Registry. But even if it mattered, the complaint would survive. The complaint alleges that Moore's phone number is registered, and that Moore is the only person who uses that number. That's more than enough to support a reasonable inference that Moore registered his number. *See* Cplt., at ¶¶ 19–21 (Dckt. No. 1).

## Conclusion

For the foregoing reasons, the motion to dismiss the complaint is denied.

Date: December 7, 2022

Steven C. Seeger
United States District Judge

11